NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

---------------------------------------------------------------X
In re:                                                          Bankruptcy Case No. 14-23687

David McCaffery
                                                                Chapter 7
            Debtor.
---------------------------------------------------------------X

Estate of Patrick G. McCaffery

            Plaintiff,

vs.                                                             Adversary No. 14-1887

David McCaffery
                                                                **MEMORANDUM OPINION**
            Defendant
---------------------------------------------------------------X


**APPEARANCES**

MARY BETH SCHROEDER, ESQUIRE
Law Offices of Mary Beth Schroeder
802 Main Street – Unit 2A
Toms River, New Jersey 08753
Attorney for Plaintiff, Estate of Patrick G. McCaffery

DAVID MCCAFFERY
21 Applegate Lane
New Egypt, New Jersey 08533
Self-Represented Defendant


**KATHRYN C. FERGUSON, CHIEF U.S.B.J.**

Procedural History

David McCaffery filed a Chapter 7 bankruptcy petition on July 2, 2014. On October 3, 2014, the Estate of Patrick G. McCaffery filed a complaint seeking a determination of non-dischargeability of debt. The Debtor filed an answer and counterclaim. The counterclaim sought two forms of relief: return of the deed to 21 Applegate Lane; and compensatory damages pursuant to *N.J.S.A.* 2A:15-5.10. On the Plaintiff's motion for sanctions, the court dismissed the portion of the counterclaim that sought the return of the title, but permitted the compensatory damages portion to proceed to trial. The court tried this matter on August 4, 2016, and reserved decision. The court received the parties' post-trial submissions on September 20 and 26, 2016.

Findings of Fact

The Debtor resided in his parents' home at 21 Applegate Lane, New Egypt, New Jersey. He cared for his mother and father until his mother's death, and then continued to care for his father. The Debtor's father, Patrick G. McCaffery, executed a General Power of Attorney in favor of his son, David McCaffery, dated February 5, 2007.[1] The original Power of Attorney was not properly notarized, so it was signed again and notarized in May 2010. Patrick G. McCaffery named his son, Patrick J. McCaffery, as the executor of his will. Patrick J. McCaffery died in July 2012. The Ocean County Surrogate's Court appointed Peter Van Dyke, Esq. as the substitute administrator of the Estate of Patrick G. McCaffery by order dated May 17, 2013.[2]

Patrick G. McCaffery died on July 16, 2010 at 7:16 a.m.[3] On the day of his death, the Debtor cashed a check in the amount of $25,000 made payable to "cash." The check was drawn on an account at Bank of America that was in the name of Patrick G. McCaffery and "David M.

---

[1] Plaintiff's Ex. B
[2] Plaintiff's Ex. A
[3] Plaintiff's Ex. C

2

McCaffery POA".[4] The check bears the signature of Patrick G. McCaffery and is dated July 16, 2010. By order dated January 23, 2014, Judge Peterson of the Ocean County Superior Court required the Debtor to pay the sum of $25,000 to the Estate of Patrick G. McCaffery within 10 days. The Debtor has never paid the $25,000 to his father's decedent estate.

Conclusions of law

A. 11 U.S.C. § 523(a)(4)

Count Two of the Plaintiff's complaint seeks an exception to discharge pursuant to 11 U.S.C. § 523(a)(4). That section of the Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[5] The first step in establishing liability under § 523(a)(4) is a finding that the debtor was acting in a fiduciary capacity.

The definition of a fiduciary under § 523(a)(4) is a question of federal law.[6] While an individual may qualify as a fiduciary under state law, the federal law definition is more circumscribed.[7] Cases consistently hold that the general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the context of dischargeability.[8] The narrower definition of fiduciary under § 523(a)(4) is consistent with the policy of construing exceptions to discharge in favor of the debtor.[9] In bankruptcy, a fiduciary relationship must arise from an express or technical trust.[10] An express trust is created by: (1) sufficient words to create a trust; (2) a definite subject; and (3) an identifiable object or res.[11] A technical trust may arise

---

[4] Plaintiff's Ex. D
[5] 11 U.S.C. § 523(a)(4)
[6] *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003)
[7] *In re Davis*, 476 B.R. 191, 195 (Bankr. W.D. Pa. 2012)
[8] *In re Moeller*, 466 B.R. 525 (Bankr. S.D. Cal. 2012)
[9] *In re Hokanen*, 446 B.R. 373, 378 n. 5 (9th Cir. BAP 2011)
[10] *Braden Trust v. Chavez (In re Chavez)*, 430 B.R. 890, 894 (Bankr. D. Ariz. 2010)
[11] *In re Stanifer*, 236 B.R. 709, 714 (9th Cir. BAP 1999)

from common law, statute, or the nature of a relationship – such as that between a lawyer and client.

Not all power of attorney scenarios give rise to a cause of action under § 523(a)(4); however, a number of courts have found that a power of attorney can create a fiduciary relationship for purposes of § 523(a)(4).[12] Courts generally look to whether there was a power imbalance between the parties or whether the principal had an ability to monitor the attorney-in-fact.[13] From the evidence adduced at trial, it is apparent that at the time of the events at issue in the complaint there was both a power imbalance and an inability to monitor the attorney-in-fact.

Patrick G. McCaffery was an elderly man who could not care for himself. In the week prior to his death, his son David arranged for him to be placed in a nursing home because David would be out of town for a few days. On Mr. McCaffery's first morning in the nursing home, he fell and was taken to the emergency room at Jersey Shore Medical Center. As a result, Mr. McCaffery's nursing home stay was extended so that 24-hour nursing care could be arranged for him at home. Patrick G. McCaffery passed away in the nursing home on the morning he was scheduled to return home. As these facts demonstrate, during the relevant time period there was both a power imbalance -- because the father was dependent on his son to arrange for care -- and an inability to monitor his son's activities -- because Mr. McCaffery was in a nursing home.

---

[12] *See, e.g., In re Goepp*, 455 B.R. 388, 397 (Bankr. D.N.J. 2011) (power of attorney creates a fiduciary relationship due to clear power imbalance between the principal and debtor/agent*); In re Marcet*, 352 B.R. 462, 473 (Bankr. N.D. Ill. 2006) (power of attorney creates a § 523(a)(4) type of relationship where the attorney-in-fact has a power of ascendency over the principal).
[13] *See, e.g., Estate of Smith v. Marcet (In re Marcet)*, 352 B.R. 462, 473 (Bankr. N.D. Ill. 2006) (power of attorney creates a § 523(a)(4)-type fiduciary relationship where there is "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter"); *May v. Lyon (In re Lyon)*, 348 B.R. 9, 23–24 & n. 33 (Bankr. D. Conn. 2006) (citing cases applying a fact-specific approach to powers-of-attorney and noting that a § 523(a)(4) fiduciary relationship "may be found when one party to a ... fiduciary relationship is incapable of monitoring the other's behavior")

4

Under these facts, the court finds that the debtor was acting as a fiduciary for his father as that term is used in § 523(a)(4).

The next determination the court must make is whether the debtor committed fraud or defalcation while acting as a fiduciary for his father. The Bankruptcy Code does not define the term "defalcation." The Supreme Court recently had occasion to consider the meaning of "defalcation" and to resolve a split that had developed among lower courts.[14] The Court held that the term "defalcation" in § 523(a)(4) refers to nonfraudulent breaches of fiduciary duty. Defalcation describes a state of mind "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."[15]

The evidence presented at trial fell short of establishing that the debtor acted with actual knowledge that cashing a large check on the day of his father's death was improper fiduciary behavior. The evidence did, however, support a finding that David McCaffery acted recklessly. The Supreme Court has found that recklessness is sufficient for establishing defalcation. In *Bullock*, the Court noted:

> where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See id., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'willful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., § 2.02(2)(c), at 226

---

[14] *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754 (2013)
[15] *Id.* at 1754

At trial, both sides emphasized the timing of the cashing of the check and the timing of when the debtor became aware of his father's death. The focus on those time periods misses the point. Even if the court were to accept that the check was actually signed by the debtor's father on the morning of his death, and were to accept that at the time the debtor cashed the check and deposited into his personal account he was unaware of his father's death, the debtor is still guilty of defalcation for spending the money. By spending the money after being aware of his father's death, the debtor was acting with gross recklessness with respect to his fiduciary duty. The debtor was or should have been aware that his authority to act under the Power of Attorney terminated upon the death of his father. Likewise, the debtor was or should have been aware that he was not the sole beneficiary under his father's will, nor was he the executor. The debtor's actions demonstrate that he was willfully blind to those facts. So, even if the debtor cashed the check before he was aware of his father's death, he spent the money after he was aware of it. The only proper action the debtor could have taken after finding out about his father's death was to safeguard the $25,000 until it could be distributed in accordance with his father's will. The debtor no longer had any right to use his father's money even if, as the debtor testified, he was merely following through on his father's instructions. The debtor's right to act on his father's behalf ended when the Power of Attorney terminated. The only way the debtor could have been free to use the $25,000 to fulfill his father's wishes post-mortem would have been if the $25,000 was a gift. As was established by the testimony of Mr. VanDyke, the Power of Attorney did not contain a gifting provision. So viewed in any manner, the debtor's actions after his father's death were in reckless disregard of his fiduciary duty and constitute defalcation. The court finds that the debt arising from the failure to return the $25,000 is non-dischargeable pursuant to § 523(a)(4).

B. 11 U.S.C. § 523(a)(2)(A)

Given the court's finding under § 523(a)(4), the court need not consider this alternative argument for non-dischargeability. Count One will be dismissed without prejudice.

C. Counterclaim

The remaining portion of the debtor's counterclaim sought compensatory damages for costs expended by the debtor for the care of his parents and their animals. As the party bringing the counterclaim, the debtor has the burden of proof.[16] The debtor failed to meet that burden because he failed to enter any of his proposed exhibits into evidence, and he failed to present any witness who could substantiate his claim for damages.

Even if the court could overlook the debtor's failure to properly admit evidence because he is self-represented, the debtor still would not be entitled to the relief he seeks. Debtor's proposed exhibits A – G are not relevant to this matter because they concern the title to the property at 21 Applegate Road, an issue that has been fully and finally decided by the state court. The remainder of the debtor's request for compensation is based on the faulty assumption that he is entitled to be reimbursed for caring for his parents. Absent a written agreement that provides for such compensation, the court must assume the debtor was simply acting out of filial loyalty. The debtor has not presented any legal theory on which he is entitled to compensation. The debtor's strongest argument was that he was entitled to be reimbursed from his father's estate for real estate taxes he paid, but the debtor failed to present any evidence of that payment. The counterclaim is dismissed with prejudice.

---

[16] *Hollywood Foreign Press Ass'n v. Red Zone Capital Partners*, 870 F. Supp. 2d 881 (C.D. Cal. 2012) ("The burden of proof lies with the party asserting each claim, counterclaim or defense….")

Conclusion

The foregoing constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 7052. The court grants judgment in favor of the Plaintiff on Count Two of the complaint. Count One is dismissed without prejudice. The counterclaim is dismissed. Plaintiff's counsel should submit an order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
Chief Judge, US Bankruptcy Court

Dated: December 7, 2016